THE PRESIDENT, DIRECTORS AND COMPANY OF THE LEWISTON FALLS BANK *versus* ARTEMAS LEONARD.

1. A notarial certificate that he "exhibited the note at the place of business of the promissors and demanded payment thereof, was answered by the person in charge, that the promissors had left no funds there to pay said note, and that said note remaining unpaid, he duly notified the endorsers by written notices, sent them by mail, and that this was done at the request of proper authority, the time limited and grace having expired," affords reasonable inference that he stated substantially these facts in the written notices which he sent.

2. Notwithstanding the actual residence of the endorser of a note at the time he endorsed the note in suit, and at the time it became due, was in a place other than that to which notice of its dishonor was sent: yet if he held himself out to the public as a resident of the latter place, and thereby deceived the holder, and led him to change his course, and send the notice to that place he is estopped to deny the fact.

REPORTED by MAY, J.

This is an action of assumpsit against the defendant as endorser of a promissory note, made by the Maine Carpet Company, and signed by E. E. Rice, Treasurer, for $5000,00, dated at Boston, on the twelfth day of March, 1856, payable Rufus K. Page, or order, in four months after date, and by him endorsed in these words: "Pay the order of A. Leonard," and by the defendant endorsed in blank; also endorsed by Albt. H. Small, Cash'r, in these words: "pay C. H. Warner, Cashier, or order." The writ is dated the twenty-ninth day of July, A. D., 1856.

The plaintiff offered in evidence the note in suit, also the notarial certificate of protest and notices of non-payment of the note, signed by A. Bates, Notary Public, dated at Boston, the 15th day of July, 1856; which were read to the jury.

The plaintiffs called Albert H. Small, who testified that he is cashier of Lewiston Falls Bank, and has been cashier for three and a half years last past; that he recognized the note in suit as one discounted at the Lewiston Falls Bank; that after the note was discounted, he forwarded it to the Bank

of Commerce, in Boston, the correspondent of the Lewiston Falls Bank, for collection; that the day after it fell due he received notices to himself, and one to each of the other endorsers, from Adolphus Bates, Notary Public, of its non-payment, and requiring payment; that he immediately enclosed the notices to the several endorsers, directed to them, in separate envelopes, and deposited them in the post office in Lewiston, paying the postage; that he deposited the notices in the post office the same day he received them, he should judge within ten minutes after he received them, and directed the notice to the defendant, to Hallowell, Maine; that he directed the notice to defendant to Hallowell, because he believed that to be his place of residence, and that he made no inquiries as to defendant's place of residence after receiving the notices. He further testified, that he had known defendant by reputation, for ten years, as a prominent business man in the town of Hallowell; that he had information that defendant was of Hallowell from E. E. Rice, Treasurer of the Maine Carpet Company, and from other business men in that vicinity; that at the time the note was discounted, in conversation with E. E. Rice, Treasurer of the Maine Carpet Company, he understood him to say that defendant was of Hallowell, and President of the Bank of Hallowell; that Rice took the money on this note, but did not negotiate it. It was negotiated by Mr. Alden Sampson. Mr. Rice brought the note to the bank and had it discounted. He (Rice,) spoke of defendant as of Hallowell, in contra-distinction to *Silas* Leonard, of Augusta.

*Daniel Holland*, called by the plaintiffs, testified that he is president of the Lewiston Falls Bank, and was president of said bank at the time the note in suit was discounted; that he saw E. E. Rice, Treasurer of the Maine Carpet Company in the bank at the time this note was discounted; that he has been president of Lewiston Falls Bank since October, 1854; that he was acquainted with defendant only by reputation; that he had seen the man; that at the time the note was discounted he learned from E. E. Rice that defendant was a

prominent business man in Hallowell, and always had been, and was president of the Bank of Hallowell; that after the note in suit was discounted, and before it was dishonored, he had other information that defendant was resident of Hallowell, aside from that obtained from Rice; that he communicated such information to Mr. Small, the cashier.

*Alden Sampson,* called by plaintiffs, testified that he resides in Manchester; that Manchester was formerly a part of Hallowell; that his manufacturing business is in Manchester; did his bank business in Hallowell; that he is a stockholder in Lewiston Falls Bank, and a director in the Northern Bank in Hallowell, and had done his banking business in Hallowell for fifteen or twenty years; knows defendant and has known him for twenty years and upwards; so far as he knew, defendant had always resided in Hallowell; had resided there since he had known him; that he had never done business with defendant since he had been president of the Bank of Hallowell; had been in habit of visiting village and now city of Hallowell, on an average of twice a week; that he knew many of the business men of Hallowell, and defendant among the rest; that he negotiated the note in suit, think in February, 1856, and represented Artemas Leonard, (the defendant,) as president of the Bank of Hallowell; the Bank of Hallowell is in Hallowell; thought defendant had spent a portion of the winters in New York for four or five years; that he learned within four weeks, for the first time, that defendant was not president of the Bank of Hallowell; that he never knew defendant to spend any summer in New York, until last summer; that he has not had any intimate business relations with defendant for the last few years, and did not know what Mr. Leonard had been in New York for; that to the best of his knowledge defendant has been in Hallowell summers, except the last summer, and thought that defendant had not been absent from Hallowell for an entire year before last year.

*A. S. Washburn,* called by plaintiffs and testified: that he is cashier of the Bank of Hallowell, and has the custody of

records of bank; that at organization of bank, defendant was elected director and president of the Bank of Hallowell; that defendant was a stockholder in the Bank of Hallowell. He had no agent in Hallowell, to his knowledge, except that Mrs. Hill, his daughter, resided there; that defendant has signed some bills of Bank of Hallowell since he has been in New York; that he had sometimes taken letters from the post office in Hallowell, addressed to defendant; had transacted business for him as cashier; knew defendant's box in post office, and Mrs. Hill has occupied it; but did not know whether that box had been in her name or not. Bills for postage, and rent of box in post office, have been made out to defendant and sent into bank for payment, and that he paid them.

Deposition of C. L. Hill read by defendant, in which she says: "I reside in Hallowell, and am the daughter of Mr. Artemas Leonard. Mr. Leonard now lives in the city of New York. He has lived there since the first part of the year 1853. I have taken some letters from the Hallowell post office and sent them to him; some I have taken and have not sent to him." "He boarded with a family in New York." In answer to the following question by plaintiff's attorney, "What kind of letters was it that you received and did not forward to your father?" she answered, "Notices from the Lewiston Falls Bank. I have them in the house now."

The case was taken from the jury by consent, and reported to the full court with power to draw such inferences as a jury might, and who are to enter such judgement upon so much of the foregoing testimony as is legally admissible, as the law may require.

*Morrill & Fessenden,* counsel for plaintiff.

The main question that has been raised in this cause is, whether sufficient notice has been given to the defendant of the dishonor and non-payment of the note in suit, and whether due and reasonable diligence had been used to give it.

The mercantile law, regulating the liabilities of parties to notes and bills, does not require actual notice of dishonor to

an endorser, in order to charge him, but reasonable care and dilligence in giving such notice; each case must stand on its own peculiar circumstances, there being no universal rule on this subject, and when such dilligence is unsuccessful it will excuse want of notice. The law prescribes no specific mode of enquiry; and it is sufficient if any mode be resorted to, which, under the circumstances of the case, is characterized by reasonable dilligence. Hartford Bank v. Stedman and Gordon, 3 Conn. R., 489; Hill v. Varrell, 3 Maine R., 233; Chouteau v. Webster, 6 Met. R., 1; Bayley on Bills, 280; Story on Prom. Notes, 367, 368, 369, and 370, and in note on page 414; Clark v. Bigelow, 16 Maine R., 246.

The law does not presume that the holder of negotiable paper is acquainted with the residence of an endorser thereon. U. S. Digest, vol. 2, supplement, p. 625; Eagle Bank v. Chapin, 3 Pick., 180.

The testimony in the case shows that sometime in February, 1856, Alden Sampson applied to Daniel Holland, the president of the Lewiston Falls Bank, (the plaintiffs,) to discount the note in suit. Subsequently, in March following, E. E. Rice, Treasurer of the Maine Carpet Company, by whom the note was signed for said company, presented it for discount, and it was discounted. The note when so presented, had been transferred by Rufus K. Page, the payee, by a special endorsement, to Artemas Leonard, the defendant, and by Leonard endorsed in blank. At the time the money was paid over to Rice, by the plaintiffs for the note, he informed not only Holland, the president of the bank, but also Albert H. Small, the cashier, that the defendant was of Hallowell, and President of the Bank of Hallowell, and spoke of him in contra-distinction to Silas Leonard, of Augusta. And it further appears by the testimony, that both Holland and Small had other information, obtained from persons residing in that vicinity, between the time when the note was discounted, and the time when it fell due and was dishonored, that defendant was a resident of Hallowell, and that the plaintiffs supposed and believed that the defendant resided in that

town, and had no knowledge that he ever removed from there, or pretended that his residence was in any other place; and this information was obtained from Rice, who was a party to the note, and at the very time it was discounted, and who must be regarded as the special agent of the defendant for completing the transaction of negotiating the note, which had been commenced by Sampson. And the note being placed in Rice's hands for that purpose by the defendant, whose property it was, it is contended by the plaintiffs that what ever representations, declarations and admissions he (Rice) made to the officers of the bank, at the time it was discounted, respecting the place of residence of the defendant, would bind him; because such representations, declarations, or admissions, relate to and constitute a part of the res gestæ, and because the plaintiffs dealing with Rice, standing in the relation he then did to the defendant, are to be considered as dealing with the defendant himself. Story on Agency, 4th ed., pp. 134, 135–139; Greenl. Ev., vol. 1, p. 125.

And further the plaintiffs say, that under all the circumstances of this case, as appears by the testimony, they have used all that care and diligence which the law requires of them in communicating the notice to the defendant, and were excused from making any further inquiries for the residence of the defendant, and that the notice given is sufficient to bind him.

The testimony in the case shows that the note in suit was endorsed by Albert H. Small, in his capacity of Cashier of the Lewiston Falls Bank, and sent to the Bank of Commerce, in Boston, their (plaintiffs') correspondent, for collection, and that when it fell due, notices to himself and to the other endorsers, were sent to him under the same cover, within the time prescribed by law, and that he, the same afternoon he received them, enclosed the notices to the defendant and Page, in separate envelopes, directing the one for the defendant to Hallowell, Maine, and deposited it in the post office in Lewiston, paying the postage. And the attention of the court is asked to the facts proved, that the defendant

had at that time, a box in the post office in Hallowell, standing in his name; that letters were frequently received there for him; the bills for postage and rent of the box were invariably made out in his name, and paid by Mr. Washburn for him, and that, too, as late as the month of April last, and he never notified the post master that he did not wish to occupy the box any longer; that Mrs. Hill was accustomed to take out his letters and forward them to him, and the notices from the Lewiston Falls Bank were received there by her, and retained in her possession.   The plaintiffs say that sending the notice by post, directed as it was, was a proper mode, and sufficient to bind the endorser, even if the party to whom it was directed can prove that he never received it.   Bayley on Bills, chap. 7, sec. 2, p. 275; also note 116 on same page. Story on promissory notes, pp. 408, 409, 412, 413, 414, 415, and in note on the five last named pages; 2 Greenl. Ev., note on p. 156.

The plaintiffs cannot be said to have remained in a state of passive and contented ignorance relative to the residence of this defendant, for, as has been stated, they had information directly from Rice, who was not only a party to the note, but was in fact the defendant's agent, voluntarily given, and that too, as an inducement to the plaintiffs to take the note, but also other information obtained from persons in the vicinity of Hallowell, that the defendant did reside in Hallowell, and it was reasonable for the plaintiffs to suppose that such was his place of residence, at the time of the making and dishonor of the note.   And there is no evidence in the case that the plaintiffs knew or had any reason to believe, or ever supposed that he had any other place of residence than that; but, on the contrary, they thought and believed, and had every reason to believe, not only from the representations of Rice and Sampson, but also from common report, and the reputation which the defendant had of being a prominent business man in the town of Hallowell, that such was his place of business and residence.   And further, they had every reason to believe that such was his residence from the acts

and conduct of the defendant himself. The evidence in the case discloses, that for a long period of time before, at the time of the making, negotiation, and dishonor of the note, the defendant had been, and was, a director in, and president of the Bank of Hallowell, which is in Hallowell, having been elected the last time in October, 1855, and acting in that capacity up to October, 1856, which was after the dishonor of the note, and never resigned his office as such, and during all that time he performed some, if not all the duties required of a person holding such an office. R. S., p. 751; Act of Amendment of 1841, chap. 1, sec. 4.

And it is a well established principle of law, if upon diligent inquiries, information is obtained of the residence of the endorser in a place where he does not at that time actually reside, and notice is directed accordingly to that place, it will be sufficient to bind the endorser.

The plaintiffs contend that if, under all these circumstances, it is found, or appears that they were actually ignorant of defendant's residence, yet acting as they did under the information which they had, that he was a resident of Hallowell, obtained in the manner it was, they have used sufficient care in ascertaining defendant's place of residence, and in communicating the notice, and that he should be held under the notice already given. Bayley on Bills, 2d Am. ed., chap. 7, sec. 2, pp. 282, and note 125, on same page—283, 284, and note b, on p. 284; Story on promissory notes, pp. 368, 369, 418; Bank of Utica v. Davidson, 5 Wendall, 587; Chapman v. Lipscombe, 1 Johns., 294—this case is referred to in Hill v. Varrell, 3 Maine R., 233, 237.

It has been held that parties may be, and frequently are so situated that notice may well be given at either of several places, and while, in such cases, the holder is in duty bound to use due diligence in communicating such notice, it is not required of him to see that the notice is brought home to the party. Bank of Columbia v. Lawrence, 1 Peters Sup. Ct. R., 582; this case is noticed in Story on promissory notes p. 364.

The plaintiffs contend that under all the circumstances and facts shown in this case, and the law cited, they were justified in sending the notice to the defendant in the manner, and to the place they did send it; and that the defendant should be held liable as an endorser, and that they are entitled to judgment in this case, for the amount of the note and costs.

*Record* and *Walton*, counsel for defendant, argued,

1. That the notice which the plaintiffs undertook to give was defective and insufficient to charge the defendant, if he had received it, and cited 3 Kent's Com., 108; Gilbert v. Dennis, 3 Met, 495; Nailor v. Bowie, 3 Md. R., 251. That its purport simply was, that the note *remained unpaid,* and payment of the endorsers thereof *required;* and that such notice does not assert or imply that the note had been dishonored.

2. That between the allegation and proof there is a fatal variance; the one alleging notice to the defendant, of nonpayment and dishonor of the note, the other showing that no such notice was sent to his place of residence. *Hill* v. Varrell, 3 Maine R., 233; Harris v. Richardson, 19 Eng. Com. Law R., 506.

To the general rule of law, that in an action against the endorser of a promissory note, it is necessary for the plaintiff to prove that the *defendant had due notice of the dishonor of the note,* there are some exceptions, one of which is, that if, *after diligent inquiry,* he cannot find the residence of the endorser, or mistakes it, the remedy is not lost. 3 Kent's Com., 107. Mr. Greenleaf invariably uses the same form of expression—*diligent inquiry,* vol. 2, 180–195; Whittier v. Graffum, 3 Maine R., 82—" *diligent inquiry* and search would have been sufficient;" Porter v. Judson, 1 Gray, 175—no sufficient evidence of *diligent inquiry.*

In the case at bar the defendant has never had notice of the dishonor of the note in suit. The plaintiffs seek to excuse themselves upon the ground of ignorance and mistake in supposing his residence at Hallowell, without showing

that they made diligent inquiry, to find it.   Was not the mistake the result of negligence which *diligent* inquiry would have corrected?

What evidence will satisfy the court of *diligent inquiry?* Granite Bank v. Ayers, 16 Pick., 392; Pierce v. Pendar, 5 Met., 352; Wheeler v. Field, 6 Met., 290; Phipps v. Chase, 6 Met., 491; Porter v. Judson, 1 Gray, 175, before cited; Barker v. Clark, 20 Maine R., 156; Hill v. Varrill, 3 Maine R., 233; Firth v. Thrush, 8 B. and C., 887.   The acts of the plaintiffs fail entirely to show due diligence.

Goodenow, J.—This is an action of assumpsit against the defendant, as endorser of a promissory note, of which the following is a copy:

Dolls. 5000.                    Boston, March 12th, 1856.

Four months after date, we promise to pay to the order of Rufus K. Page, five thousand dollars, value received, for Maine Carpet Company.          E. E. Rice, Treas'r.

This note was endorsed by Page in these words: " Pay to the order of A. Leonard," and by the defendant endorsed in blank; also endorsed by Alb't H. Small, Cash'r, in these words: " Pay C. H. Warren, Cashier, or order."

The plaintiffs offered in evidence the note, also the notarial certificate of protest, and notices of non-payment of the note, signed by A. Bates, Notary Public, dated at Boston, July 15, 1856.

The defendant contends that the notice which the plaintiffs have undertaken to prove, if duly sent or received, is defective and insufficient; that it does not state that the note has been *dishonored,* or state facts from which *its dishonor* might reasonably have been inferred.

The Notary states what he did do; that he exhibited the note at the place of business of the promissors, in Harrison Avenue, and demanding payment thereof, was answered by the person in charge, that the promissors had left no funds there to pay said note, and that said note remaining unpaid, he duly notified the endorsers by written notices, sent them

11

by mail, &c.; and that this was done at the request of the cashier of the Bank of Commerce, on the 15th day of July, 1856, the time limited and grace having expired.

It may be reasonably inferred that he stated substantially these facts in the written notices which he sent. By R. S., chap. 44, sec. 12, the protest duly certified by a notary public, under his hand and official seal, shall be legal evidence of the facts stated in such protest, as to the same, and also as to the notice given to the drawer or endorser, in any court of law. In Bradley v. Davis, 26 Maine, 50, Mr. Chief Justice Whitman says, " It is not stated in the statute that such certificate shall be conclusive evidence of those facts; " all that was stated in the notarial certificate in this last named case, after stating the demand, &c., was, " I then notified the maker and endorser of the non-payment of said note," and the court say, " we have no reason to doubt that the notice contained all that it was essential that a notice should contain; and that it contained information that the note had been protested for non-payment." In the case at bar, if the notice had, in part, been deficient in any important respect, it might easily have been proved by the defendant, as his daughter, Mrs. Hill, stated in the deposition taken by him in this case, that she had the notices in her house at the time the deposition was given. This case differs from those cited, where the notices were actually produced, or the exact terms of them proved or admitted, by which their inefficiency was conclusively established; as in the case, Gilbert v. Dennis, 3 Met., 506, and 9 Met., 174.

The next and most important question in this case is, was the notice to the defendant rightly directed and sent to him at Hallowell? He contends that his residence at the time the note was protested was in the city of New York, and that notice should have been sent to him at that place, instead of Hallowell.

There is nothing on the note to indicate the residence of the defendant. It is dated at Boston. Rufus K. Page was a prominent business man in Hallowell. The defendant had

been, for many years, a resident of Hallowell, a prominent business man there, and a director and president of the Hallowell bank. The plaintiffs were in Maine.

The defendant contends that in January 1853, he transfered his residence from Hallowell to New York, and that he has had no residence in Hallowell since that time, but that his residence has been in the city of New York.

When the note was negotiated by Alden Sampson, he represented to the plaintiffs that the defendant was president of the Bank of Hallowell, in Hallowell. Daniel Holland, president of the Lewiston Falls Bank, testified that at the time the note was discounted, he learned from E. E. Rice, that the defendant was a prominent business man in Hallowell, and always had been, and was president of the Bank of Hallowell.

The defendant testified that he removed from Hallowell, in the month of January, 1853, to the city of New York, and that he has ever since had his residence there. A. S. Washburn, cashier of the Bank of Hallowell, testified that there had been no new bills issued from the Bank of Hallowell since 1854; that he "thought there were bills of that bank, dated as late as the winter of 1854, over the signature of the defendant, and issued by witness, as cashier;" "that the defendant had signed some bills of the Bank of Hallowell *since he had been in New York.*"

By the records of the Bank of Hallowell, it appears that at the annual meeting of the stockholders, held October 9th, 1855, the defendant was chosen one of the directors of the bank, and is the first person named on the list, and the second person named is R. K. Page. In January 1853, the defendant was elected president of the Bank of Hallowell, by the directors, and not since. He held the office of director of the bank until October 1856. He never made any formal resignation as director, at any time. He was not re-elected a director in October, 1856.

Thomas W. Newman testified that he was and had been post master at Hallowell since the first of May 1853. That the defendant has had a box in the post office at Hallowell,

which has been marked and known as the box of Artemas Leonard, during all that time; that all letters directed to Artemas Leonard, or Mrs. Hill, his daughter, have been put into that box. That the bills have been made out in the name of the defendant, and have been paid by Mr. A. S. Washburn, cashier of the bank.

By the statute of this state, on banks, chap. 77, sec. 4, it is provided that none but a stockholder in such bank, and a citizen of and *resident in the state*, shall be eligible by the stockholders to the office of director. Men are presumed to know the law; and it is not to be presumed that the stockholders of this bank, and the defendant, or either of them, intended to violate it, in their management of this institution. Will it be said that he was chosen a director of the bank, after his removal from the state, without his knowledge and consent? This, to us, seems improbable. Besides, it is satisfactorily proved that he acted as president of the bank, and signed bills as such, after his alleged removal to New York. Every bill signed by him, and put in circulation after January, 1853, was notice to the public, that, at the date of the bill his residence was in this state; and it is not contended that he had a residence at any other place in the state, if he had none in Hallowell. The defendant does not state that he has, or ever had a place of business in New York, that he ever kept house there, or voted or paid taxes in that city. He might have had a temporary residence there, for the purpose of avoiding taxation in Hallowell; or he might have supposed by residing in New York, he could give a wider circulation to the bills of the bank; or he may have desired to have the place of his residence uncertain and equivocal, in order to avoid his responsibility as an endorser.

Notwithstanding his actual residence was in the city of New York at the time he endorsed the note in suit, and at the time it became due; yet, if he held himself out to the public, or allowed others to hold him out to the public as a resident of Hallowell, and thereby deceived the plaintiffs,

and led them to alter their course, he is in the same category with one who holds himself out as a partner of others, when he is not such in fact. He is estopped to deny the fact.

We cannot avoid the conclusion that if the defendant did not receive due notice of the protest for non-payment of the note in suit, it was because he did not wish to receive such notice. It was his own fault.

The notice was duly deposited in the post office, directed to him at Hallowell. It came into the hands of his daughter, Mrs. Hill. In answer to the question, "Since 1853, have any letters been received at the Hallowell post office for your father, and if so, what became of them?" she says, "I have taken some of them and sent them to him; some I have taken and have not sent them." Subsequently the inquiry is made of her, "What kind of letters was it that you received and did not forward to your father?" She answered, "Notices from the Lewiston Falls Bank. I have them in the house now." She says, subsequently, "My father did not ask me to send them." She does *not* say that she was not instructed by her *father not to send them.* It would have been very natural for her to have forwarded the notices to her father, after having ascertained what they contained, unless she had, in some way, intimations from him not to do so, but to retain them. We are to draw such inferences in this case, as a jury might draw. It seems to us a question of fact, rather than a question of law. The fact seems to be established, that the defendant has actually resided in the city of New York, most of the time since January 1853, till the present. That since that time, he has held himself out, or allowed others to hold him out, as a resident in this state, by permitting himself to be chosen a director of the Bank of Hallowell, and president of the same, and acting as such by signing its bills. That the plaintiffs were led by these circumstances communicated to them, to believe that his residence was in Hallowell, at the time the note in suit was endorsed, and at the time it was protested for non-payment, and that they acted accordingly. They might well

have supposed, from all the facts and circumstances known to them, that his permanent residence was still in Hallowell, and that a notice directed to him at Hallowell would be more likely to reach him through the post office, than if directed to him at the city of New York.

We are of opinion that the plaintiffs have used due diligence in order to give the defendant notice of the non-payment of the note when it became due and payable, and that according to the agreement of the parties, *a default must be entered.* If it should be supposed that proof of depositing notices in the post office, directed to the defendant at Hallowell, and received by his daughter, Mrs. Hill, is not equivalent to actual notice, and therefore does not sustain the allegation in the writ, of actual notice, the plaintiffs may have leave to amend, by alleging the use of due diligence on their part, in order to give notice.

MAY and DAVIS, JJ., concurred in the result.